07 CV 5569

Judge Berman

Robert Weigel (RW 0163)
Howard S. Hogan (HH 7995)
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.
and Chloé SAS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

JUN 1 1 2007

GUCCI AMERICA, INC. and CHLOÉ SAS,

    Plaintiffs,

      -against-

HGL ENTERPRISES;
EZDESIGNERREPLICAS.COM;
DESIGNERREPLICAS.HIGHPOWERSITES.COM;
HENRY LEIZGOLD a/k/a ENRIQUE GOSMAN
LEIZGOLD; HERLINDA LEIZGOLD a/k/a LINDA
LEIZGOLD a/k/a HERLINDA PASAPERA; ABC
COMPANIES; and JOHN DOES,

      Defendants.

------------------------------------------------------------------x

07 Civ. 5569

**COMPLAINT**

Plaintiffs Gucci America, Inc. ("Gucci") and Chloé SAS ("Chloé") (collectively,

"Plaintiffs"), by their attorneys, Gibson, Dunn & Crutcher, LLP, for their complaint against HGL

Enterprises, EZDesignerReplicas.com, DesignerReplicas.HighPowerSites.com, Henry Leizgold

a/k/a Enrique Gosman Leizgold, Herlinda Leizgold a/k/a Linda Leizgold a/k/a Herlinda

Pasapera, ABC Companies, and John Does (collectively, "Defendants"), allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      Consumers instantly recognize the various trademarks used to identify the luxury items merchandised or manufactured by or under licenses from Gucci and Chloé (collectively, the "Plaintiffs' Marks").  For decades, these famous, arbitrary, and fanciful Plaintiffs' Marks have received enormous exposure in the marketplace.  Over the years, millions of consumers have been exposed to Plaintiffs' Marks through extensive advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, on the Internet, and in other forms of unsolicited media coverage.  As a result, Plaintiffs' Marks are among the most widely-recognized trademarks in the United States, as well as among the most popular with consumers, which adds enormous value to the authentic products that the bear the Plaintiffs' Marks ("Plaintiffs' Products").

2.      Defendants, who have no affiliation with the Plaintiffs, have attempted to capitalize on the popularity of the Plaintiffs' Marks.  They manufacture and market counterfeit versions of Plaintiffs' Products (the "Counterfeit Products") in an effort to confuse consumers into believing that they are buying versions of Plaintiffs' Products or to otherwise compete directly with Plaintiffs' Products.

3.      To ensure that consumers make the association between Defendants' Counterfeit Products and the Plaintiffs' Products from which they were copied, Defendants not only copy the designs, patterns, and color schemes associated with Plaintiffs, but also expressly identify the Counterfeit Products as "Gucci" or "Chloé" products.

4.      Defendants have manufactured and sold their Counterfeit Products without the permission, authorization, or approval of the Plaintiffs.  Their conduct is likely to cause, and has caused, consumers mistakenly to believe that the Counterfeit Products sold and promoted by

Defendants either are authentic Plaintiffs' Products; are produced by Defendants under a license, agreement, joint venture or other form of authorization by the Plaintiffs; or are otherwise endorsed by or affiliated with the Plaintiffs, either at the point of sale or when consumers and potential consumers see the Counterfeit Products in use.

5.    For these and other reasons, Defendants have caused, and unless enjoined, will continue to cause, Plaintiffs irreparable harm and an incalculable loss of goodwill and damages.

## PARTIES

6.    Gucci is organized and exists under the laws of New York, with its principal place of business located at 685 Fifth Avenue, New York, New York 10022.  Gucci is the sole and exclusive distributor in the United States of items bearing the Gucci Marks (as defined herein) on leather goods, clothing, jewelry, accessories, home products, and related items (collectively, the "Gucci Products").

7.    Chloé is organized and exists under the laws of the Republic of France, with its principal place of business located at 5/7 Avenue Percier, 75008 Paris, France.  Chloé and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the Chloé Marks (as defined herein) on apparel, handbags, fragrances, jewelry, and other accessories (collectively, the "Chloé Products").

8.    Upon information and belief, the entities doing business as EZDesignerReplicas.com and DesignerReplicas.HighPowerSites.com are organized and exist under the laws of United States, with a business address of 10051 Westpark Drive #240 and/or #273, Houston, TX 77042.

9.      Upon information and belief, the entities doing business as EZDesignerReplicas.com and DesignerReplicas.HighPowerSites.com operate as separate URLs for the same website.

10.     Upon information and belief, Henry Leizgold a/k/a Enrique Gosman Leizgold ("Mr. Leizgold") and Herlinda Leizgold a/k/a Herlinda Pasapera ("Mrs. Leizgold) are husband and wife, with a home and/or business addresses of 10051 Westpark Drive #240 and/or #273, Houston, TX 77042.

11.     Upon information and belief, ABC Companies are companies engaged in the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and number are presently unknown.

12.     Upon information and belief, John Does are individuals who are consciously engaged in directing, controlling, ratifying, or otherwise participating in the manufacture, distribution, sale, and advertisement of Counterfeit Products, or who consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and number are presently unknown.

## JURISDICTION AND VENUE

13.     This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act") and under the laws of the State of New York.

14.     This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).  Personal jurisdiction is proper over all Defendants pursuant to N.Y.C.P.L.R. §302(a) because all Defendants have transacted and done business in New York, have solicited consumers in this District, have entered into agreements with consumers and

businesses within this District, and have offered to sell and have sold Counterfeit Products to consumers within this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims arose in this District.

### PLAINTIFFS' BUSINESS AND MARKS

16.     The Gucci and Chloé brands of luxury products are enormously popular with the general public.  The Plaintiffs' advertising, promotional, and marketing efforts have resulted in widespread and favorable public acceptance and recognition of Gucci and Chloé brands of luxury products.  As a result, the Plaintiffs' Marks have become famous and highly valuable marks, possessing strong secondary meaning among consumers.

17.     Gucci is the owner of the right, title and interest in and to, inter alia, the following federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|------|------|------|
| GUCCI | 876,292<br>959,338<br>972,078<br>1,168,477<br>1,321,864 | 09/09/69<br>5/22/73<br>10/30/73<br>09/08/81<br>02/26/85 |
| NON-INTERLOCKING GG MONOGRAM<br> | 1,106,722 | 11/21/78 |

| GUCCI CREST  | 1,112,601 | 02/06/79 |
|---|---|---|
| GREEN-RED-GREEN STRIPE  | 1,122,780<br>1,483,526 | 07/24/79<br>04/05/88 |
| SQUARE G  | 2,042,805<br>2,234,272 | 03/11/97<br>03/23/99 |
| REPEATING GG DESIGN  | 3,072,549 | 03/28/06 |

     18.     Annexed hereto as Exhibit 1 are true and correct copies of United States Patent and Trademark Office ("PTO") registration certificates evidencing Gucci's ownership of these trademarks and printouts from the PTO's website setting forth the status of Gucci Marks. All of the registrations set forth in Exhibit 1 are valid, subsisting, unrevoked, and uncancelled. Additionally, many of these registrations are incontestable. Gucci also owns common law rights

in the above and other marks for use in connection with the Gucci Products. These registered and common law trademarks are collectively referred to as the "Gucci Marks."

19.     The Gucci Marks are in full force and effect. Gucci has never abandoned the Gucci Marks, nor has Gucci ever abandoned the goodwill of Gucci's businesses in connection thereto. Gucci intends to continue to preserve and maintain its rights with respect to the Gucci Marks.

20.     For over fifty years, Chloé and its predecessors-in-interest have produced finely-crafted apparel and accessories for women. Today, the company offers for sale and sells a wide range of products including apparel, handbags, shoes, sunglasses, and other accessories. Chloé's commitment to innovation in design and function, as well as the use of only the finest materials, has brought Chloé renown as a leading maker of luxury goods.

21.     Chloé is the owner of the right, title, and interest in and to, inter alia, the following trademarks and/or service marks that are either federally registered or pending federal registration:

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| CHLOE | 1,491,810<br>1,513,535<br>1,925,176<br>2,745,487<br>3,198,388 | 06/14/88<br>11/22/88<br>10/10/95<br>08/05/03<br>01/16/07 |
| CHLOE IN STYLIZED FORM<br>**Chloé** | 950,843<br>1,020,289<br>1,103,275<br>1,182,862<br>78,761,371 | 01/16/73<br>09/16/75<br>10/03/78<br>12/22/81<br>pending |

| PADDINGTON | 78,863,562 | pending |
| SILVERADO | 78,863,566 | pending |

22.    Annexed hereto as Exhibit 2 are true and correct copies of PTO registration certificates evidencing Chloé's ownership of these trademarks and printouts from the PTO's website setting forth the status of Chloé Marks.  All of the registrations set forth in Exhibit 2 are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of these registrations are incontestable.  Chloé also owns common law rights in the above and other marks for use in connection with apparel and handbags, among other goods.  These registered and common law trademarks are collectively referred to as the "Chloé Marks."

23.    Chloé is also the owner of the trade name "Chloé," which has been used to identify Chloé's products in the United States.

24.    Plaintiffs' Marks have been widely promoted, both in the United States and throughout the world.  Plaintiffs' Marks are among the world's most famous and widely recognized, and the public and consumers have come to recognize that Plaintiffs' Products originate exclusively with Plaintiffs.

25.    Plaintiffs each maintain strict quality control standards for all of Plaintiffs' Products.  Customers, potential customers, and other members of the public and industry associate Plaintiffs' Products with exceptional materials, style, and workmanship.  On information and belief, many consumers purchase Plaintiffs' Products because of Plaintiffs' reputation for quality.  On information and belief, Plaintiffs' Products are among the most popular luxury products offered for sale in the United States.

26.     Plaintiffs display their respective Gucci and Chloé Products in their respective advertising and promotional materials.  To date, Plaintiffs have spent hundreds of millions of dollars in advertising and promoting Plaintiffs' Marks and Plaintiffs' Products, and Plaintiffs, their predecessors-in-interest and its affiliated companies have enjoyed billions of dollars in sales.

27.     Plaintiffs' continuous and broad use of Plaintiffs' Marks has expanded their renown and enabled Plaintiffs to achieve fame and celebrity in their various product markets. Plaintiffs' respective reputations are a direct result of Plaintiffs' extensive advertising and promotion, and concomitant widespread sales, the care and skill utilized in the manufacture of the Plaintiffs' Products, the uniform high quality of such products sold under, or in connection with the Plaintiffs' Marks, and the public acceptance thereof.  Plaintiffs have created invaluable goodwill throughout the United States and elsewhere by selling products of dependable quality. Based on the extensive sales of the Plaintiffs' Products and such products' wide popularity, the Plaintiffs' Marks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Plaintiffs.

## THE COUNTERFEIT PRODUCTS

28.     Defendants, without authorization or license from Plaintiffs, have willfully and intentionally used, reproduced and/or copied Plaintiffs' Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products.  Defendants have shipped at least certain of the Counterfeit Products to New York.

29.    Defendants' websites freely admit that the Counterfeit Products are "replicas" of Plaintiffs' Products.  For example, shown below is an image of an authentic Gucci "Jolicoeur" handbag.  The product displayed below bears Gucci's federally registered trademark GUCCI name, non-interlocking "GG" monogram, repeating "GG" design, and green-red-green stripe. See Ex. 1 (U.S. Reg. Nos. 876,292; 959,338; 972,078; 1,106,722; 1,122,780; 1,168,477; 1,321,864; 1,483,526; 3,072,549).



30.    Set forth below is an image of a Counterfeit Product offered by Defendants for sale to the public through the DesignerReplicasHighPowerSites.com and EZDesignerReplicas.com websites.  The handbag displayed below has straps and ornamentation that are designed to appear like the straps and ornamentation on the authentic Gucci handbag shown above.  The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the authentic Gucci product shown above, it also bears an exact copy of Gucci's federally registered trademark name, non-interlocking "GG" monogram, repeating "GG" design, and green-red-green stripe.



31.    Similarly, shown below is an image of an authentic Chloé Paddington Classic

Satchel.  The product displayed below bears Chloé's federally registered CHLOE name

trademark, see Ex. 2 (U.S. Reg. Nos. 1,491,810; 1,513,535; 1,925,176; 2,745,487; 3,198,388),

and trademark PADDINGTON name, see Ex. 2 (U.S. Serial No. 78,863,562).



32.    Set forth below is an image of a Counterfeit Product offered by Defendants for

sale to the public through the DesignerReplicas.HighPowerSites.com and

EZDesignerReplicas.com websites.  The handbag displayed below has handles, buckles, pockets,

and ornamentation that are designed to appear like the handles, buckles, pockets, and

ornamentation on the authentic Chloé handbag shown above.  The overall effect of the design of

this Counterfeit Product is not only confusingly similar to the design of the authentic Chloé

product shown above, it also bears an exact copy of Chloé's federally registered trademark name.



33.    Further, shown below is an image of an authentic Gucci "Chain Large Hobo"

handbag.  The packaging and labels for the product displayed below bear Gucci's federally

registered trademark GUCCI name.  See Ex. 1 (U.S. Reg. Nos. 876,292; 959,338; 972,078;

1,168,477; 1,321,864).



34.    Set forth below is an image of a Counterfeit Product offered by Defendants for

sale to the public through the DesignerReplicas.HighPowerSites.com and

EZDesignerReplicas.com websites.  The handbag displayed below is designed to appear like the

authentic Gucci handbag shown above.  The overall effect of the design of this Counterfeit

Product is not only confusingly similar to the design of the authentic Gucci product shown above, it also bears an exact copy of Gucci's federally registered trademark name on its packaging and label.



35.    All of Defendants' Counterfeit Products follow this pattern – each uses the color scheme, pattern, and design of one of Plaintiffs' Products and bears an exact duplicate of at least one of Plaintiffs' Marks.

36.    Even though they are of inferior quality and workmanship, the Counterfeit Products appear superficially similar, and in some cases superficially identical, to genuine Plaintiffs' Products.  The design of the Counterfeit Products and the display of the Plaintiffs' Marks communicate to consumers, and consumers are therefore likely to be confused into believing, that the Counterfeit Products were manufactured, licensed, approved or sponsored by, or otherwise affiliated with, the Plaintiffs.

37.    Defendants have offered these Counterfeit Products for sale without permission, authority or license from Plaintiffs and, upon information and belief, such actions were taken in bad faith with full knowledge of the Plaintiffs' ownership of and/or exclusive rights to use and

license the Plaintiffs' Marks. At all relevant times and in furtherance of their infringing activities, Defendants have willfully and intentionally used and continue to use Plaintiffs' Marks on Counterfeit Products.

38.    The result of Defendants' manufacturing, advertisement, distribution, and sale of Counterfeit Products will be to deceive and mislead consumers into believing that Defendants' products or activities are authorized or sponsored by the Plaintiffs or to cause mistake or to deceive.

39.    In particular, Defendants' websites make liberal use of the Plaintiffs' Marks to make an explicit connection between their Counterfeit Products and Plaintiffs' Products. For example, set forth below are true and accurate images of Defendants' DesignerReplicas.HighPowerSites.com and EZDesignerReplicas.com websites describing their Counterfeit Products as, respectively, "Gucci" and "Chloe":



40.    The Counterfeit Products are not genuine Plaintiffs' Products bearing the Plaintiffs' Marks.  Plaintiffs did not manufacture, inspect, or package the Counterfeit Products, and did not approve the Counterfeit Products for sale and/or distribution.  Plaintiffs have examined samples of the Counterfeit Products and determined them to be counterfeit.

41.    On information and belief, Defendants have collectively sold, offered to sell, and/or distributed over 40 different types of goods bearing counterfeits of Plaintiffs' Marks.

42.    On information and belief, Defendants have made use of the services of at least the following banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real property in order to carry out, facilitate, complete, or ratify the unlawful transactions complained of herein or used such entities to hold, transfer, transmit, relay, maintain, or invest profits from the unlawful activities described herein:  (*i*) Washington Mutual Bank and Bank of America accounts, including but not limited to Account No. 0971897867 in the name of "H. Leizgold"; and (*ii*) MasterCard and Visa credit and/or debit card services.

## FIRST CAUSE OF ACTION

(Trademark Infringement Under Section 32
of the Lanham Act, 15 U.S.C. § 1114(1)(a))

43.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

44.    Plaintiffs' Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products and services of the very highest quality and reputation.

45.    Defendants' actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of their Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

46.    Defendants' unauthorized use of Plaintiffs' Marks constitutes trademark infringement of federally-registered Plaintiffs' Marks, the full extent of which is presently unknown but is substantial.  This has caused damage to Plaintiffs and the substantial business and goodwill symbolized by Plaintiffs' Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

47.    Defendants' actions described above, including the unauthorized use of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Plaintiffs, to Plaintiffs' Marks, and to the business and goodwill represented thereby, leaving Plaintiffs with no adequate remedy at law.

## SECOND CAUSE OF ACTION

(Trademark Counterfeiting Under Sections 32, 34 and 35,
of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), & 1117(b)-(c))

48.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

49.    Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in Plaintiffs' Marks, Defendants have distributed, advertised, offered

for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Plaintiffs, in or affecting interstate commerce.

50.    Defendants' Counterfeit Products reproduce, counterfeit, copy, and colorably imitate the Plaintiffs' Marks or display spurious designations that are identical with, or substantially indistinguishable from Plaintiffs' Marks.  Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' Counterfeit Products, which is likely to cause confusion, or to cause mistake, or to deceive.

51.    Defendants' unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs.  Defendants' actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

52.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damage to their valuable Plaintiffs' Marks, and other damages in an amount to be proved at trial.

53.    Plaintiffs do not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins Defendants from such fraudulent business practices.

### THIRD CAUSE OF ACTION

(False Designation of Origin Under Section 43(a)
of the Lanham Act, 15 U.S.C. § 1125(a))

54.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

55.     As a result of the experience, care, and service of Plaintiffs in producing and providing Plaintiffs' Products, Plaintiffs' Products have become widely known and have acquired a worldwide reputation for excellence.  Moreover, Plaintiffs' Marks have become associated with Plaintiffs' Products, and have come to symbolize the reputation for quality and excellence of Plaintiffs' Products.  As such, Plaintiffs' Marks have attained secondary meaning. Plaintiffs' Marks are also inherently distinctive.

56.     Defendants' use of Plaintiffs' Marks on or in connection with the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause such people to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

57.     Defendants' actions, including but not limited to their unauthorized use in commerce of Plaintiffs' Marks, constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.     Defendants' actions described above, including their unauthorized, false, and misleading use in commerce of Plaintiffs' Marks on Counterfeit Products and other uses of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks in an amount that cannot presently be ascertained, leaving Plaintiffs with no adequate remedy at law.

## FOURTH CAUSE OF ACTION

(Trademark Dilution Under the Federal Trademark
Dilution Act, 15 U.S.C. § 1125(c))

59.    Plaintiffs repeat and reallege each and every allegation in the foregoing
paragraphs as if fully set forth herein.

60.    Plaintiffs' Marks are extremely famous and recognizable trademarks used in
interstate commerce in the United States.  Among other things: (a) they have a high degree of
inherent distinctiveness; (b) they have been used continuously for decades throughout the United
States to promote many goods and services; (c) Plaintiffs and their authorized licensees have
advertised and publicized Plaintiffs' Marks continuously for decades throughout the United
States; (d) Plaintiffs have used Plaintiffs' Marks in a trading area of broad geographical scope
encompassing all of the states and territories of the United States; (e) Plaintiffs' Marks are
among the preeminent marks in the luxury goods market; (f) Plaintiffs' Marks have an extremely
high degree of recognition among consumers; (g) there are no trademarks similar to those of
Plaintiffs; and (h) many of Plaintiffs' Marks are the subject of valid and subsisting registrations
under the Lanham Act on the Principal Register.

61.    Because Plaintiffs' Products have gained a reputation for superior quality and
excellence, Plaintiffs' Marks have gained substantial renown and reputation.

62.    Defendants' conduct described above dilutes, blurs, tarnishes, and whittles away
the distinctiveness of Plaintiffs' Marks, and has caused actual dilution and has detracted from the
distinctiveness of the famous Plaintiffs' Marks with consequent damage to Plaintiffs, and to the
substantial business and goodwill symbolized by Plaintiffs' Marks in violation of the Federal
Trademark Dilution Act, 15 U.S.C. § 1125(c).

63.     Defendants' acts of trademark dilution have caused and, unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, and to Plaintiffs' Marks and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Plaintiffs with no adequate remedy at law.

64.     Defendants' conduct has been undertaken with a willful intent to trade on the reputation of Plaintiffs and to cause dilution of the famous Plaintiffs' Marks, and this conduct entitles Plaintiffs to damages and the other remedies available pursuant to 15 U.S.C. § 1125(c)(2).

## FIFTH CAUSE OF ACTION

### (Trademark Infringement Under New York Law)

65.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

66.     Defendants' acts as described above constitute trademark infringement under New York common and/or statutory law.  N.Y. Gen. Bus. Law §§ 360-k, 360-o.

## SIXTH CAUSE OF ACTION

### (Trademark Dilution Under New York Law)

67.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

68.     Defendants' acts as described above dilute and detract from the distinctiveness of the famous Plaintiffs' Marks, resulting in damage to Plaintiffs and the substantial business and goodwill symbolized by Plaintiffs' Marks in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

## SEVENTH CAUSE OF ACTION

(Unfair Competition Under New York Law)

69.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

70.    Defendants' acts as described above constitute unfair competition under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## EIGHTH CAUSE OF ACTION

(Deceptive Acts and Practices Under New York Statutory Law)

71.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

72.    Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.


WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Immediately and permanently enjoin Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from:

(a)    manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or otherwise offering for sale Counterfeit Products or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or

22

colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(b)     making or employing any other commercial use of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c)     using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiffs; and

(d)     doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiffs or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs; and

(e)     moving, returning, or otherwise disposing of, in any manner, any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks; and

(f)    secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe Plaintiff's Trademarks; and

(g)    further diluting and infringing all Plaintiffs' Marks and damaging Plaintiffs' goodwill; and

(h)    otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner; and

(i)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (h), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (h).

2.    Direct Defendants to account to Plaintiffs for their profits and order that the Plaintiffs recover their damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

3.    Award Plaintiffs statutory damages of $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

4.      Award Plaintiffs punitive damages pursuant to New York State common law (as preserved by N.Y. Gen. Bus. Law § 360-o) on account of Defendants' gross, wanton, willful, and malicious conduct;

5.      Direct Defendants to recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same;

6.      Direct Defendants to deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

7.      Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

8.      Direct Defendants to supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other

products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

9.    Direct Defendants to file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action;

10.    Award Plaintiffs their reasonable attorneys' fees along with the costs and disbursements incurred herein as a result of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h);

11.    Order that any of Defendants' assets that are held by or within the control of entities that are subject to the jurisdiction of this Court, be restrained and frozen pending the outcome of this action so that Plaintiffs' right to the damages set forth in this Complaint is not later rendered meaningless.

12.    Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        June 11, 2007

                              Respectfully submitted,

                              GIBSON, DUNN & CRUTCHER

                              By: _____
                                  Robert Weigel (RW 0163)
                                  Howard S. Hogan (HH 7995)

                              200 Park Avenue
                              New York, New York 10166
                              (212) 351-4000

                              *Attorneys for Plaintiffs Gucci America, Inc.
                              and Chloé SAS*