17. Defendants' websites contain dozens of Gucci products that follow the same pattern of utilizing Gucci's trademarks on products that copy Gucci's unique combination of colors and design to fool consumers into believing that the product originated from Gucci.

18. I have examined multiple images of each of the counterfeit Gucci Products that are offered for sale through Defendants' websites and were purchased from Defendants by Alaco Limited and described in the Declaration of Yuliya P. Kuklina. These products did not come from Gucci nor were they produced by any party that is authorized by Gucci to manufacture the products and they are not licensed for sale or distribution. Gucci did not authorize Defendants to manufacture, import, export, distribute, advertise, sell or offer to sell these products and did not have the opportunity to control their quality and nature.

19. The quality of Defendants' Counterfeit Products, although designed to imitate Gucci Products, is inferior to that of products produced by Gucci. The result of Defendants' activities is to put into distribution products that do not embody Gucci's high standards of design, quality of materials, and manufacturing, therefore undermining Gucci's reputation amongst consumers and diluting the brand. These differences, though, are not so obvious as to warn consumers to the fact that they are not buying official Gucci Products.

20. Further, Defendants' Counterfeit Products are sold in the same channels of trade and distribution as official Gucci Products, including but not limited to stores and through websites on the Internet.

21. The design of Defendants' Counterfeit Products and the use of the Gucci Marks in connection with the sale of Counterfeit Products communicates to consumers that the Counterfeit Products were manufactured, licensed, approved or sponsored by, or otherwise affiliated with, Gucci.

**THE IRREPARABLE INJURY**

22. The result of Defendants' manufacturing, advertisement, distribution and sale of Counterfeit Products will be to deceive and mislead consumers into believing that Defendants' Counterfeit Products or activities are authorized or sponsored by Gucci.

23. Defendants' activities are causing immediate and irreparable harm to Gucci in many ways. In the first instance, an unknowable number of consumers will decide to visit Defendants' websites, and possibly purchase Defendants' Counterfeit Products, because of Defendants' use of the Gucci Marks. There is no way to determine precisely how many of these consumers may have otherwise visited authorized sellers of Gucci Products and made purchases of authentic Gucci Products were it not for Defendants' use of the Gucci Marks to misdirect consumers. Under either scenario, Defendants' activities certainly resulted in lost sales and market share to Gucci.

24. Worse, an incalculable number of consumers will become confused into believing that there is some connection between Gucci, on the one hand, and Defendants or their Counterfeit Products, on the other hand, and develop a lower opinion of Gucci as a result. Consumers who are exposed to Defendants' Counterfeit Products will be less likely to buy official Gucci Products in the future when they learn of the poor quality of Defendants' Counterfeit Products or otherwise become disappointed by the way that Defendants conduct business outside the authorization or influence of Gucci. Moreover, the presence of unlicensed imitation Gucci Products in the marketplace harms the image and cachet of officially-licensed Gucci Products. As a result, Defendants' activities are causing irreparable injury to Gucci's reputation and goodwill.

25. Defendants should be immediately enjoined from selling fraudulent Gucci products and have no equitable interest in continuing this damaging and illegal activity.

26. I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, June 7, 2007.

_____
Jonathan H. Moss