websites. The handbag displayed below has handles, buckles, pockets, and ornamentation that are designed to appear like the handles, buckles, pockets, and ornamentation on the officially licensed Chloé handbag shown above. The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the officially licensed Chloé product shown above, it also bears an exact copy of Chloé's federally registered trademark name.



15. All of Defendants' Counterfeit Products follow this pattern – each is sold in connection with use of the trademark CHLOÉ name and uses the color combination and design of a Chloé Product and other Chloé Marks.

16. I have closely examined multiple, detailed photographs of the Chloé Counterfeit Products bought from Defendants by Plaintiffs' investigator, and I can certify on behalf of Chloé that they were not manufactured by Chloé or anyone authorized by Chloé to manufacture products that bear the Chloé Marks.

17. Chloé did not approve the Counterfeit Products for sale and/or distribution, nor did Chloé authorize Defendants to make the Counterfeit Products or to offer them for sale to any customers. Chloé has not had the opportunity to inspect or approve the quality or characteristics of the Counterfeit Chloé Products.

18. Although Defendants have gone to great lengths so that their Counterfeit Products will mimic the visual cues of official Chloé Products, Defendants' Counterfeit Products do not adhere to the quality of officially-licensed Chloé goods. For example, Defendants use lower quality materials, as well as inferior stitching and assembly techniques, and the designs selected are only superficially similar to the high quality of designs that are selected for all Chloé Products. Defendants have also adopted packaging and labels that differ from those approved by Chloé. These differences, though, are not so obvious as to warn consumers to the fact that they are not buying official Chloé Products.

19. Defendants' use of the Chloé Marks on their Counterfeit Products, and their imitation designs, are particularly dangerous to Chloé because Defendants offer their Counterfeit Products through websites on the Internet, as do some authorized sellers of Chloé Products Products. Since Internet users do not have the opportunity to inspect these goods before purchasing them, it is impossible for them to confirm that Defendants' Counterfeit Products are not legitimate Chloé Products. Moreover, Internet users that are searching for official Chloé Products on the Internet may be diverted to one of Defendants' websites through Defendants' many uses of the Chloé Marks, rather than reaching websites that sell legitimate Chloé Products. Further, Defendants may also be selling their Counterfeit Products to stores and other retailers that operate in proximity to official Chloé vendors.

20. Chloé's investigation into Defendants' activities takes place in the context of other efforts to identify and eliminate other activity that infringes their intellectual property rights. Chloé initiated this lawsuit after these investigations confirmed that there is no apparent end to Defendants' counterfeiting and other infringing activity.

**THE IRREPARABLE INJURY**

21. The design of Defendants' Counterfeit Products and the use of the Chloé Marks in connection with the sale of Counterfeit Products each communicates to consumers that the Counterfeit Products were manufactured, licensed, approved or sponsored by, or otherwise affiliated with, Chloé.

22. In my experience, the distribution, offering for sale and sale by Defendants of Counterfeit Chloé Products is likely to result in irreparable injury to Chloé in that the sale of the Counterfeit Products is likely to and does cause confusion, deception, and mistake among the public and such counterfeit use is likely to undermine the sales credibility of Chloé as a purveyor of high-quality goods.

23. Although the manufacture, marketing and sale of Defendants' Counterfeit Products are clearly likely to cause lost sales of official Chloé Products, the overall harm caused by such products is unquantifiable and incalculable because it damages the reputation and good will of Chloé and the Chloé Marks. Consumers who purchase Defendants' Counterfeit Products believing them to be official Chloé Products, or even consumers who merely see and examine Defendants' Counterfeit Products on the street and or their personal lives, are likely to be disappointed by the quality of these Counterfeit Products and will be less likely to buy official Chloé Products in the future. Moreover, the presence of unlicensed imitation Chloé Products in the marketplace harms the image and cachet of authentic Chloé Products.

24. Defendants, on the other hand, have no need to use Chloé Marks and could not be seriously injured if enjoined from doing so. They are free to produce a wide variety of categories of luxury products, such as handbags and watches, with other, non-infringing designs, as countless other manufacturers already do.

7

I declare under penalty of perjury that the foregoing is true and correct. Executed at London, United Kingdom, May 9, 2007.

*S.M. Henderson*
Sheila Mary Henderson